UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JACQUELINE JOHNSON,                    )
                                       )
                                       )
                    Plaintiff,         )
        v.                             )        No. 4:13CV586 TIA
                                       )
GEORGE J. BALL,                        )
                                       )
                    Defendant.         )

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of Defendant Deputy George

J. Ball to exclude an expert report and opinion and the motion Plaintiff Jacqueline

Johnson for partial summary judgment with respect to Count I of her complaint

alleging that Defendant George J. Ball is liable  pursuant to  42 U.S.C. §1983 for

her unlawful arrest on a charge of Arson, Second Degree in violation of the Fourth

and Fourteenth Amendments to the United States Constitution.  Also before the

Court are Defendant' s motions for summary judgment on Count I and on Count II,

a Missouri common law claim for malicious prosecution.  For the reasons set forth

below, Defendant's motions to exclude expert testimony are granted, Plaintiff's

motion for summary judgment is denied and Defendant's motion for summary

judgment is granted.

# I. **Motion to Exclude Expert Report**

## A. *Facts and Arguments*

In support of her motion for partial summary judgment, Plaintiff offers an expert report prepared by a retired federal district judge who opines that Defendant either omitted facts from his application for the arrest warrant which, if included, would have revealed the absence of probable cause to arrest Plaintiff or that Defendant could not have held an objectively reasonable belief that the facts included in his affidavit supported a finding of probable cause to arrest Plaintiff.

The expert opined that no reasonable judge knowing all of the facts available to Defendant, including the facts Defendant omitted from his probable cause statement would have found that there was probable cause to believe that Ms. Johnson committed a crime. *Id.* He further opined that Defendant knew of, but omitted, the conclusion of the fire investigator, a law enforcement officer with superior training and knowledge regarding the crime of arson, that there was no probable cause to detain Plaintiff. *Id.* The expert concluded that if the omitted facts had been included in the probable cause statement, a reasonable judge would not have signed the warrant and Plaintiff would not have been arrested and detained in violation of the Fourth Amendment. *Id.*

The parties do not dispute the qualifications of the expert, but disagree about whether the expert's report and opinion exceeds the permissible scope of expert

testimony.  Defendant asserts that the report and opinion should be excluded because it amounts to a legal conclusion that Defendant's affidavit failed to provide a basis for a finding of probable cause to charge and detain Plaintiff or in the alternative that Defendant is not entitled to claim the defense of qualified immunity with respect to Count I.  In response, Plaintiff contends that the expert opinion addresses an appropriate subject of expert testimony. Plaintiff asserts that it is intended to assist the trier of fact in determining the questions of probable cause and qualified immunity ,issues that Plaintiff characterizes as a mixed questions of law and fact.

*B. Applicable Law*

Federal Rule of Evidence 702, governing the admissibility of expert testimony, provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
> Fed. R. of Evid. 702

In determining whether an expert opinion is admissible, the trial court acts as a "gate-keeper" to ensure that all expert testimony or evidence admitted at trial is relevant, reliable and "will assist the trier of fact to understand the evidence or to

determine a fact in issue." *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579, 589 (1993).

"Legal conclusions do not qualify as expert opinions."' *Jones v. Slay*, No. 4:12–CV–2109 CAS, 2014 WL 2804407, at *11 (E.D. Mo. June 20, 2014). And "[a] determination that a defendant's legal conduct constitutes a constitutional violation is a legal conclusion." *Id.* (citing *Wade v. Haynes*, 663 F.2d 778, 784 (8th Cir.1981)); *see also Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (concluding that expert opinions regarding the reasonableness of evidence collection and strip search procedures were impermissible legal conclusions); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that expert testimony regarding the reasonableness of police behavior in light of Fourth Amendment standards was not admissible because it stated a legal conclusion).

## C. Discussion

In this case the ultimate issues presented by the parties' cross motions for summary judgment on Count I are: 1) whether Defendant violated Plaintiff's Fourth and Fourteenth Amendment rights by omitting material facts from the arrest warrant affidavit that would have revealed that there was no probable cause to arrest Plaintiff for arson; and 2) whether Defendant nonetheless could have mistakenly but reasonably believed that the facts in his possession established probable cause for Plaintiff's arrest on the arson charge.

Each of these issues presents a question of law reserved for resolution by the court rather than the trier of fact. *See, e.g.*, *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (stating that "[w]hile the existence of probable cause is a mixed question of law and fact, the ultimate conclusion is a question of law") (citation omitted); *Engle v. Townsley*, 49 F.3d 1321, 1323 (8th Cir. 1995) (holding that qualified immunity is a legal determination reserved for resolution by the court).

Consequently, where the material facts are not in dispute, expert testimony offering an opinion with respect to the presence or absence of probable cause or qualified immunity is improper because it invades the province of the court to resolve such issues. *See Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (internal citation omitted); *Estes*, 993 F.2d at 161(quoting Fed.R.Evid. 702).

For this reason, Plaintiff's expert report and testimony expressing opinions with respect to these issue is not admissible under Fed. R. Evid. 702 and Defendant's motions to exclude this expert testimony will be granted.

## II.    <u>The Motions for Summary Judgment</u>

Plaintiff asserts that she is entitled to summary judgment on Count I, her claim under 42 U.S.C. § 1983, because the undisputed facts establish that there was no probable cause to arrest and charge Plaintiff for the crime of arson, second degree.

Defendant asserts that he is entitled to judgment on Count I because the facts set forth in his statement establish probable cause for Plaintiff's arrest. In the alternative, Defendant argues that he is entitled to qualified immunity from liability on Count I because he had an objectively reasonable belief that his statement was sufficient to establish probable cause. In response, Plaintiff contends that Defendant is not entitled to qualified immunity here because he acted in a recklessly or intentionally misleading manner when he omitted facts regarding the fire inspector's findings and conclusions from his probable cause statement.

Finally, Defendant further asserts that he is entitled to summary judgment with respect to Count II, Plaintiff's claim for malicious prosecution, because the undisputed facts fail to establish the elements required under Missouri law to prove such a claim.

A.  *Standard of Review*

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.

2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In

response, the nonmovant "must do more than simply show that there is some

metaphysical doubt as to the material facts," and must come forward with "specific

facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp*., 475 U.S. 574, 586–87, (1986); *see also Briscoe v. Cnty. of St.*

*Louis, Mo*., 690 F.3d 1004, 1011(8th Cir. 2012) (citation omitted).  Therefore, "if a

nonmoving party who has the burden of persuasion at trial does not present

sufficient evidence as to any element of the cause of action, then summary

judgment is appropriate."  *Id*.

      In considering motions for summary judgment courts view the facts in the

light most favorable to the nonmoving party.  *Torgerson*, 643 F.3d at 1042

(quotations and internal citations omitted).  But that requirement applies "only if

there is a genuine dispute as to those facts."  "A mere scintilla of evidence is

insufficient to defeat summary judgment and if a nonmoving party who has the

burden of persuasion at trial does not present sufficient evidence as to any element

of the cause of action, then summary judgment is appropriate." *Pedersen v. Bio-*

*Medical App. of Minn*., No. 14–1284, 2015 WL 64382, at *3 (8th Cir. Jan. 6, 2015)

(quoting *Brunsting v. Lutsen Mountains Corp*., 601 F.3d 813, 820 (8th Cir. 2010)).

"Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions" and are not within the

province of the court on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)).

*B. The Undisputed Facts*

Having reviewed the record, including the parties' statements of fact and the exhibits, affidavits and deposition testimony offered in support thereof, the Court finds the following undisputed material facts.

On the evening of September 27, 2010, a fire at Plaintiff's residence in Salem, Missouri caused extensive damage. On the evening of the fire, Roger Hayes, an investigator with the Missouri State Fire Marshal's Office conducted an investigation at the scene and interviewed Plaintiff and her then estranged husband, Eugene Crouch, Jr. After conducting his investigation at the scene, Investigator Hayes preliminarily concluded that the cause of the fire was undetermined. As a result of this determination and according to Missouri State Fire Marshal's Office protocols he did not test for the presence of accelerants at the site. [1]

Approximately two months later on November 22, 2010, Mr. Crouch appeared voluntarily at the Dent County Prosecuting Attorney's Office and told her that he had set a fire. The prosecutor stopped Mr. Crouch from sharing any

---

[1] Investigator Hayes testified at his deposition that once a fire is deemed to be of "undetermined" cause or origin, it is the policy of the Missouri State Fire Marshal's Office for the investigator to take no further action in the case, including testing for the presence of accelerants at the scene of the fire.

additional information and directed Defendant, a law enforcement officer employed by the Dent County Sheriff's Department, to interview Mr. Crouch.

Mr. Crouch started by repeating his statement that he had set the fire. At this juncture Defendant advised Mr. Crouch of his *Miranda* rights. Mr. Crouch stated that he understood his *Miranda* rights and that he wanted to continue speaking with Defendant. Mr. Crouch then asked if he could begin the interview with a joke and said that he was smarter than the fire investigator. Defendant then advised Mr. Crouch of his *Miranda* rights.[2]

Mr. Crouch then told Defendant that he had set his wife's house on fire using fingernail polish remover and Zippo lighter fluid to ignite a pile of clothing in a closet in the ground floor laundry room. Mr. Crouch first said that he had set fire to Plaintiff's house for revenge. Later in the interview, he stated that he had set the fire because Plaintiff was in financial trouble, unemployed and behind on her house payments. *Id.* Mr. Crouch further stated that when he offered to set the fire, Plaintiff had agreed to the plan. *Id.*

Mr. Crouch also provided[3] the following statement:

> On Monday, September 27, 2010, at about 11:00 p.m. [Plaintiff] came to pick me up at my sister's. From there we

---

[2] Later in the interview Defendant again advised Mr. Crouch of his constitutional rights and Mr. Crouch signed a *Miranda* waiver form.
[3] Defendant typed the statement as dictated by Mr. Crouch because Defendant observed that Mr. Crouch was shaking and unable to write down his confession.

went back to her house at 1201 South MacArther [sic]. Earlier in the day we had discussed burning the house. I had made a statement to her that I could do it and no one would know it had been set. As she waited in the garage I poured fingernail polish remover on various clothing items in a closet in the laundry room. I used Zippo lighter fluid on a belt from a robe. I lit the belt on the robe to where it would reach the fingernail polish remover and walked out. From there [Plaintiff] and I went to Rolla. We went there to establish that we were not in town at the time of the fire. We went to Wal-Mart in Rolla. I am not sure how long we were there. I had purchased a couple pair of jogging pants and a movie so we could say we were going to watch a movie when we got back. I'm thinking we got back to town between 1:30 and 2 AM. When we arrived at the house the Fire Department was there and the fire was pretty much extinguished. The State Fire Marshal spoke with us separately. Everything I told him was true, except leaving out the part of us going back to the house before going to Rolla. He spoke to us and let us go.

(ECF No. 51-4: 103:5-10.)

Defendant confirmed the date, time and location of the fire using police dispatch records. He sent two deputies to Plaintiff's home to ask if she would come to the Sheriff's Department for an interview. Defendant also contacted Investigator Hayes, who had investigated the fire on the night it occurred.

After Defendant contacted him on November 22, 2010, Investigator Hayes interviewed Mr. Crouch and conducted a voice stress analysis test. Investigator Hayes asked Mr. Crouch if he had started the fire at Plaintiff's house and whether Plaintiff knew that he planned to burn the house. Investigator Hayes testified that Mr. Crouch answered both questions in the affirmative and that the voice stress analysis test indicated that Mr. Crouch was telling the truth. (ECF No. 40-3:

62:10-63:9, 74:16-19, 75:5-10.)  Investigator Hayes then interviewed Plaintiff who

denied that she had agreed to have Mr. Crouch start the fire and stated that she had

no involvement in setting the fire.  (*Id.* at 65:8-9, 65:10-13.)  Defendant was not

present for either interview and did not discuss his own interview of Mr. Crouch

with Investigator Hayes.

After the concluding the interviews, Investigator Hayes conferred with

Defendant.  Investigator Hayes told Defendant that Mr. Crouch may have started

the fire but that it could not have started as Mr. Crouch described because the

physical evidence[4] did not match Mr. Crouch's "confession."  At that time

Investigator Hayes had concluded that the cause of the fire was undetermined and

therefore, according to policies of the Missouri State Fire Marshal's Office,

declined to provide an affidavit stating there was probable cause to believe that Mr.

Crouch had started the fire.[5]  Investigator Hayes also suggested to Defendant that

Plaintiff should be released pending further investigation.[6]  (ECF No. 51-4: 54:5-

---

[4]    Investigator Hayes subsequently testified at his deposition that the physical
evidence suggested that the fire did not start in the closet showed only moderate
damage in the closet area, on visual inspection revealed no evidence of the use of
accelerant in the closet.

[5]    Investigator Hayes also testified at his deposition that pursuant to the policy
of the Missouri State Fire Marshal's Office, an investigator may not submit a
probable cause statement unless he has first determined that the fire in question
was "incendiary," or intentionally set.  And in the absence of such a determination
a fire investigator does not submit a statement regarding the cause of the fire or
who might have set it.

[6]    Investigator Hayes eventually prepared a report documenting his

12, 63:10-64:7, 68:13-14, 90:23-24); (ECF No. 40-2 & 51-5: 85:3-6, 85:10-13.)

Defendant did not interview Plaintiff but drove her back to her residence. During the drive Plaintiff asked Defendant if she could talk to him. Defendant responded that she could if she wished to. Plaintiff then told Defendant that she had driven Mr. Crouch to her house on the night of the fire and waited in her car while Mr. Crouch went inside the house to get a book. (ECF No. 51-4: 92:25-93:1; 93:1-4.) Plaintiff also said that she and Mr. Crouch had gone to Wal-Mart in Rolla after Mr. Crouch came out of her house. (ECF No. 51-4: 93:1-5.) She further stated that she had not reported these facts to Investigator Hayes. (ECF No. Johnson Deposition, 31:14-19).

Defendant returned to the Sheriff's Department and prepared an incident report concerning the fire. He also detained Mr. Crouch on the basis of his

---

investigation and conclusions, but completion of the report was delayed due to a backlog of work in his office. Defendant did not obtain or view the report before swearing out his probable cause statement. Investigator Hayes believed that the fire started at either the top or the bottom of the laundry chute but he was unable to conclusively determine the cause and point of origin of the fire. Investigator Hayes stated that in this case he could not rule out the possibility that someone, including Mr. Crouch, started the fire. Investigator Hayes' conclusion that the cause and origin of the fire were "undetermined" differed from the opinion of the private fire investigator employed by Plaintiff's insurance company who believed the fire was incendiary.

Investigator Hayes also testified on deposition that if he had been able to conclusively determine that the fire started at the bottom of the laundry chute, he also would have declared that it had been intentionally set because there was nothing at the bottom of the chute that could have accidentally caused the fire.

confession, jailed him pending the issuance of a warrant, and prepared and filed a warrant application charging him with the crime of Arson, Second Degree. (ECF Nos. 40-3 & 51-4: 65:2-12, 66:11-13, 69:18-70:5).

At his deposition in this case, Defendant acknowledged that arson investigation is a specialized area of law enforcement for which he had no training or expertise. Investigator Hayes testified at his deposition that the role of the Missouri State Fire Marshal's Office is to assist local law enforcement authorities and therefore, that it is not unusual for the Missouri State Fire Marshal's Office to work a fire scene while local law enforcement works the criminal investigation.

On January 11, 2011, approximately six weeks after the warrant issued for Crouch's arrest, Defendant received correspondence from Plaintiff's homeowner's insurance company requesting a copy of the incident report in order to "detect or prevent[] fraud, material misrepresentation or material nondisclosure." (ECF No. 51-3); ECF No. 51-4: 55:17-18, 55:22-24, 86:17-87:5.) Shortly thereafter, on January 25, 2011, Defendant prepared and filed an affidavit, which provided in pertinent part as follows:

> [Jacqueline Johnson] committed the crime of Arson in the Second Degree in that on or about 28 September, 2010, [Johnson] drove from her house at 1201 South MacArthur Street in Salem, Dent County, Missouri, to a residence which her then estranged husband, Eugene Crouch, Jr. was staying at, picked Crouch, Jr. up and transported him back to her residence at 1201 South MacArthur Street. Knowing what Crouch, Jr. intended to do, [Johnson] waited in the garage of the residence while Crouch Jr. entered the residence and set a fire, which

spread to other portions of the residence, rendering the house uninhabitable. After Crouch, Jr. had set the fire [Johnson] transported Crouch, Jr. to Wal-Mart in Rolla, Missouri with the intent of establishing an alibi for them both by being seen in public far from the scene of the fire. [Johnson] stood to gain an insurance settlement for the loss of the house to a fire.

(ECF. No. 40-3 & ECF No. 51-4:5:25– 6:10, 79:13-15 .59. )

Defendant submitted this probable cause statement in support of an application for a warrant for Plaintiff's arrest. Defendant's statement was the only affidavit submitted in support of the arrest warrant application. Thereafter, Plaintiff was charged with arson, second degree; arrested on the warrant and confined for several days.

On June 29, 2011, the prosecutor filed a *nolle prosequi* in Plaintiff's arson case. Although he believed there had been probable cause to charge Plaintiff in the case, the prosecutor filed a *nolle prosequi* due to his concern that he might be unable to convince a jury of Plaintiff's guilt. In light of this uncertainty, the limited resources of his office and the burden on the courts and the public the case presented, the prosecutor decided not to pursue a conviction in Plaintiff's criminal matter.

## III. <u>Applicable Law</u>

### A. *Probable Cause*

The Warrant Clause of the Fourth Amendment[7] requires that in order to

---

[7] The guarantee against unreasonable searches and seizures contained in the

obtain a warrant to make an arrest, a law enforcement officer must make a factual

showing sufficient to constitute "probable cause." *See* U.S. Const., Amend. IV;

*Franks v. Delaware*, 438 U.S. 154, 164 (1978). Probable cause to arrest exists if

"the totality of circumstances at the time of arrest is sufficient to lead a reasonable

person to believe that the suspect has committed or is committing an offense."

*Williams v. Decker*, 767 F.3d 734, 742 (8th Cir. 2014). The required showing is

"'[a] probability or substantial chance of criminal activity'"—not necessarily "'an

actual showing of criminal activity.'" *United States v. Smith*, 715 F.3d 1110, 1115

(8th Cir .2013) (*Smith II*) (internal quotation omitted).

"'[A] facially sufficient affidavit [in support of a search warrant] may be

challenged on the ground that in order to establish probable cause the officer

included deliberately or recklessly false statements.'" *Hawkins v. Gage County*,

759 F.3d 951, 958 (8th Cir. 2104) (quoting *United States v. Smith*, 581 F.3d 692,

695 (8th Cir. 2009) (*Smith I*)). Omission of material information from an affidavit

can form the basis of a constitutional violation "if the additional information would

have negated probable cause." *United States v. Finley*, 612 F.3d 998, 1003 n. 8

(8th Cir. 2010) (emphasis omitted). "An official who causes a constitutional

deprivation as a result of such an omission is subject to § 1983 liability." *Bagby v.*

---

Fourth Amendment is incorporated in the Due Process Clause of the Fourteenth
Amendment and thereby has been made applicable to the States and local
governments and their officials. *Colorado v. Bannister*, 449 U.S. 1, 2 (1980)
(citations omitted).

*Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996).

A material omission from a supporting affidavit will result in a constitutional violation if "(1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Hawkins*, 759 F.3d at 959 (internal quotation omitted). Reckless disregard may be inferred from the fact of the omission, but for the inference to be valid, the omitted information must be "clearly critical" to the finding of probable cause. *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (internal quotation omitted); *see also Smith I*, 581 F.3d at 695. Put another way, an omission is deemed reckless if "[a]ny reasonable person would have known that this was the kind of thing that a judge would wish to know." *Jacobs*, 986 F.2d at 1235.

## B. Qualified Immunity

"Qualified immunity protects governmental officials from liability for civil damages unless they have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Clayborn v. Struebing*, 734 F.3d 807, 808 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*,

475 U.S. 335, 341 (1986). As such, it allows officials considerable room for "mistaken judgments" and "reasonable errors." *Clayborn*, 734 F.3d at 808; *see also Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011).

In the Warrant Clause context, an officer is entitled to qualified immunity if he had a mistaken, but objectively reasonable, belief that he had probable cause to obtain a warrant. *Williams*, 767 F.3d at 742-43; *see also Dowell v. Lincoln Cnty.*, 762 F.3d 770, 777 (8th Cir. 2014) (holding that an officer is entitled to qualified immunity if he had a "mistaken, but objectively reasonable, belief that the suspect committed a criminal offense") (internal quotation omitted). Objective reasonableness depends on "the totality of the circumstances." *Borgman*, 646 F.3d at 523; *see also Dowell*, 762 F.3d at 778. "When an officer is faced with conflicting information that cannot be immediately resolved" he may have "arguable probable cause" to arrest a suspect and is entitled to qualified immunity from § 1983 liability flowing from that arrest. *Borgman*, 646 F.3d at 523.

When determining whether a state official is entitled to qualified immunity, a court decides whether the facts alleged demonstrate that his conduct violated a constitutional right and whether that right was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within the reviewing court's discretion to decide which element of the qualified immunity defense to address first. *Pearson v. Callahan*, 555 U.S. 223, 234 (2009).

## V.   Discussion

*A. The Fourth Amendment Violation*

On the basis of the undisputed facts set forth above, the Court is satisfied that the facts included in Defendant's affidavit provided probable cause to arrest and charge Plaintiff with Arson Second Degree.

Under Missouri law "[t]he elements of arson second degree are that a building was on fire, the fire was of an incendiary origin, and the defendant knowingly participated in the commission of the crime." *State v. Galvan*, 798 S.W.2d 185, 188 (Mo. Ct. App. 1990)); Mo. Rev. Stat. § 569.050.  Each of the elements may be proven by circumstantial evidence and "[t]he circumstances need not be absolutely conclusive of guilt and need not demonstrate the impossibility of innocence." *Galvan*, 798 S.W.2d at 188 (internal citation and quotation omitted).

Here, Defendant had a confession from Mr. Crouch that implicated Plaintiff in the crime of arson.  Plaintiff's admission to Defendant that she had lied to Investigator Hayes gave greater credence to Mr. Crouch's account of what occurred on the evening of the fire and Plaintiff's involvement in those events.  In addition, Plaintiff corroborated the portion of Mr. Crouch's confession stating that he and Plaintiff were together on the night of the fire and had stopped at her residence before they continued on to the Wal-Mart in Rolla; a trip Mr. Crouch asserted was made to establish an alibi.  Defendant also identified a possible

motive for the alleged arson based on the fact that Plaintiff was unemployed, behind on her mortgage payments and would likely receive an insurance payout if her house caught on fire. The letter Defendant received from Plaintiff's insurer regarding its investigation of the fire provided further support for this motive. Finally, on the basis of Mr. Crouch's confession there was probable cause to believe that the fire may have been an incendiary one.

With respect to the alleged omissions, Plaintiff offers no evidence that the Plaintiff intentionally left facts out of his statement. *See Whalen v. Langfellow*, 731 F.Supp.2d 868, 874 (D. Minn. 2010). Moreover, on the basis of a reconstructed affidavit including the allegedly material omitted facts, the Court cannot conclude that Defendant acted with reckless disregard in omitting certain facts. If reconstructed to include the material information that Plaintiff asserts should have been included, the affidavit would read as follows (additions in italics):

> Defendant committed the crime of Arson in the Second Degree in that on or about 28 September, 2010, [Ms. Johnson] drove from her house at 1201 South MacArthur Street in Salem, Dent County, Missouri, to a residence where her *then estranged* husband, Mr. Crouch was staying at, picked Mr. Crouch up and transported him back to her residence at 1201 South MacArthur Street. Knowing what Crouch Jr. intended to do, [Ms. Johnson] waited in the garage of the residence while Mr. Crouch Jr. entered the residence and set a fire, which spread to other portions of the residence, rendering the house uninhabitable. After Mr. Crouch had set the fire [Ms. Johnson] transported Mr. Crouch to Wal-Mart in Rolla, Missouri, with the intent of establishing an alibi for them by being seen in public far from the scene of the fire. [Ms.

Johnson] stood to gain an insurance settlement for the loss of the house to a fire. The facts set forth herein were derived from a confession made by Mr. Crouch on November 22, 2010, in which he explained where and how he set the fire. *When Mr. Crouch confessed, he first said that he had set the fire "for revenge" and then that he had set the fire so that [Ms. Johnson] could get insurance money.*

*Mr. Crouch stated that he started the fire in a closet on the main level of the residence by pouring fingernail polish remover on a pile of bed clothes and other laundry items in the closet and then saturating a belt in a cloth robe with lighter fluid and igniting the belt.*

*On the night of the fire, a fire marshal from the Missouri Division of Fire Safety investigated the fire at [Ms. Johnson's] residence and interviewed [Ms. Johnson] and Mr. Crouch.*

*After Mr. Crouch's confession two months later the fire marshal interviewed him again and conducted a voice stress analysis that indicated Mr. Crouch was truthful when he stated that he had set the fire and that [Ms. Johnson] knew that he intended to set the fire. Hayes also interviewed Plaintiff and she denied any involvement in the fire. He believed [Ms. Johnson] to be truthful*

*The fire marshal stated that Mr. Crouch might have set the fire but that he did not believe Mr. Crouch was telling the truth about the manner in which it was set because his statements were not consistent with the physical evidence. The fire marshal did not prepare a probable cause statement. .*

*[Ms. Johnson] and Mr. Crouch admitted to this officer that they had lied to the fire marshal. [Ms. Johnson] stated that she had in fact gone to her house with Mr. Crouch on the night of the fire although she did not tell the fire marshal that she had done so.*

At most the inclusion of the allegedly omitted facts shows that there was some question about the cause and origin of the fire, but the Court cannot conclude that the omitted facts were "critical" or that their inclusion mandated a determination that there was no probable cause to arrest Plaintiff.

Specifically, the reconstructed affidavit does not require a conclusion that

the fire was not or could not have been an incendiary one. Although Investigator

Hayes did not believe that Mr. Crouch's explanation matched the physical

evidence he had stated that Mr. Crouch may have set the fire. And although

Investigator Hayes was uncertain about whether Mr. Crouch was telling the truth

and believed that Plaintiff had no involvement in the alleged crime, the officer

knew that each of these individuals admitted that they had lied or, at the very least,

intentionally withheld important information from Investigator Hayes.

The affidavit is not required to prove every element of the offense.

Determining "if probable cause exists is not an exact science." *Brodnicki v. City of

Omaha*, 75 F.3d 1261, 1265 (8th Cir.1996). "'[T]he probability, and not a prima

facie showing, of criminal activity is the standard of probable cause.'" *Bunton v.

Randall*, No. 4:13CV00610–JLH–JTK, 2015 WL 745747, at *5 (E.D. Ark. Feb.19,

2015) (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir.1986) at

1389 (internal quotations and citations omitted)). "Probable cause exists if 'the

totality of the facts based on reasonably trustworthy information would justify a

prudent person in believing the individual arrested had committed . . . an offense.'"

*Bunton*, 2015 WL 745747, at *5 (quoting *Flynn v. Brown*, 395 F.3d 842, 844 (8th

Cir.2005)).

Plaintiff makes much of the fact that the Investigator Hayes declined to find

probable cause to charge Plaintiff at the time of Mr. Crouch's confession in

November.  Although Plaintiff intimates that Defendant lacked the expertise and authority required to assess probable cause in a case of arson, she offers no legal authority indicating that such expertise is required to support a finding of probable cause here.  Investigator Hayes refused to make a definitive statement regarding the cause and origin of the fire and therefore, according to his agency's policy could not issue a probable cause statement.  However, nothing in the record indicates that law enforcement was legally precluded from finding probable cause for a charge of arson in the absence of a corroborating statement from the fire investigator.  *See* ECF. No. 51-6 at 3 (prosecutor's testimony pointing out that a fire investigator's probable cause statement is not required to establish probable cause for a charge of arson).  Therefore, Investigator Hayes' testimony that he could not imagine writing a probable cause statement in this case is immaterial.  His after- the -fact deposition testimony has no bearing upon the validity of Defendant's probable cause assessment which must be measured by the totality of the circumstances known to Defendant at the time of the arrest.

Therefore, for the reasons set forth above, Defendant's motion for summary judgment with respect to liability on Count I is granted and Plaintiff's motion is denied.

### B. Qualified Immunity

Even if the undisputed facts had established a Fourth Amendment violation

here, the Court is satisfied that Defendant would be entitled to qualified immunity from liability with respect to Count I. First, it is clear that the constitutional right on which Count I is based was clearly established at the time that she was charged. "The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1313 (8th Cir. 2014) (internal quotation omitted). "Furthermore, it is 'clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause' in a sworn affidavit." *Id*. (quoting *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir.1991)).

Nonetheless, "law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so–provided that the mistake is objectively reasonable.'" *Bunton*, 2015 WL 745747, at *5 (quoting *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000)). Relying on *United States v. Jacobs,* 986 F.2d at 1235, Plaintiff asserts, however, that Defendant cannot claim qualified immunity because "[a]ny reasonable person would have known" that the opinion of fire investigator that the physical evidence did not match Mr. Crouch's confession "was the kind of thing that a judge would wish to know." *Jacobs*, 986 F.2d at 1235.

The Court rejects this argument as inapt. *Jacobs* addresses the question of a substantive fourth amendment violation in the context of a request for suppression.

It does not speak to the issue of qualified immunity. For purposes of the qualified immunity analysis the appropriate question is whether "an officer . . . faced with conflicting information that cannot be immediately resolved" has "arguable probable cause" to arrest a suspect. *Borgman*, 646 F.3d at 523. The fact that the charges filed against Plaintiff were eventually dismissed, or that Defendant may have had a mistaken belief that Plaintiff violated the law, does not mean that his actions violated Plaintiff's constitutional rights. "'The Constitution does not guarantee that only the guilty will be arrested.'" *Bunton*, 2015 WL 745747, at *5 (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). "'If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.'" *Id.* (quoting *Baker*, 443 U.S. at 145). Here, on the basis of the undisputed facts of record, the Court is confident that despite the conflicting information available to Defendant regarding the cause of the fire his belief that there was probable cause for Plaintiff's arrest was objectively reasonable. *See Bunton*, 2015 WL 745747, at *5; *Whalen*, 731 F.Supp.2d at 874.

Accordingly, Defendant's motion for summary judgment with respect to his claim of qualified immunity on Count I is granted.

### C. Malicious Prosecution

Under Missouri law "[t]he plaintiff must plead and prove six elements in order to prevail on a malicious-prosecution claim: (1) commencement of an earlier

prosecution against the plaintiff; (2) instigation of the prosecution by the defendant; (3) termination of the proceedings in the plaintiff's favor; (4) absence of probable cause[8] for the prosecution; (5) malice by the defendant in instituting the prosecution; and (6) damage to the plaintiff resulting from the prosecution." *Copeland v. Wicks*, No. ED 101012, 2015 WL 343644, at *6 (Mo. Ct. App. Jan. 27, 2015) (citing *Crow v. Crawford & Co.*, 259 S.W.3d 104, 114 (Mo. Ct. App. 2008)). A defendant in a malicious-prosecution suit may establish a right to summary judgment by showing facts that negate any element of the malicious prosecution claim. *Copeland*, 2015 WL 343644, at *6.

Here, even if the Court presumes that Plaintiff could prove the other elements of a malicious prosecution claim it is clear that she fails to offer any evidence from which a jury could conclude that Defendant acted with the required "malice." For purposes of a malicious prosecution claim, "malice" is defined as "any purpose other than that of bringing an offender to justice." Restatement (Second) of Torts § 653. At most, the record supports a conclusion that Defendant omitted certain facts from the affidavit in support of the arrest warrant. Moreover, there is no evidence on the record that Defendant's purpose here was anything other than to bring the individual[s] responsible for the fire to justice.

---

[8] "Federal cases analyzing section 1983 claims and Missouri cases analyzing state malicious-prosecution claims define the term "probable cause" differently." *Copeland v. Wicks*, No. ED 101012, 2015 WL 343644, at *1 (Mo.Ct. App. Jan. 27, 2015).

For these reasons, Defendant's motion for summary judgment with respect to Count II will be granted. *Torgerson*, 643 F.3d at 1042 -1043 (explaining that '"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial'") (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motions to exclude the expert report and opinion are **GRANTED**. (ECF Nos. 52 & 65.)

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment On Count I is **DENIED**. (ECF No. 39.)

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED** with respect to qualified immunity and liability on Count I and respect to liability on Count II. (ECF No. 34.)

A separate judgment shall accompany the Memorandum and Order.

Dated this 11th day of March, 2015.

*Terry I. Adelman*
TERRY I. ADELMAN
UNITED STATES MAGISTRATE JUDGE